**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

RICHARD O'NEAL                                                                              PLAINTIFF

v.                                       No. 4:11-cv-221 KGB

BATESVILLE SCHOOL DISTRICT NO. 1,
BY ITS BOARD OF DIRECTORS, DR. PAUL HANCE,
JENNIFER EMERY, RODNEY STROUD,
GEORGE LATUS, LEONARD THARP, SCOTT WOOD,
AND SCOTT FREDRICK, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES AND
DR. RANDY WILLISON, SUPERINTENDENT                                    DEFENDANTS

## OPINION AND ORDER

Plaintiff Richard O'Neal, a former employee of the Batesville School District No. 1 (the "District"), brings this 42 U.S.C. § 1983 action against the District, members of the District's board of directors, individually and in their official capacities, and the District's superintendent, Dr. Randy Willison. Mr. O'Neal alleges various constitutional violations related to the District's termination of his employment contract. He also alleges conspiracy and various state law claims for breach of contract, defamation, and conspiracy. This matter is before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 27, 36). For the reasons that follow, defendants' motion for summary judgment is granted as to Mr. O'Neal's substantive due process, procedural due process, and First Amendment claims (Dkt. No. 27). Mr. O'Neal's conspiracy claim under federal law is dismissed without prejudice for failure to state a claim, and his state law breach of contract, defamation, and conspiracy claims are dismissed without prejudice, as this Court declines to exercise jurisdiction over those claims. Mr. O'Neal's motion for summary judgment is denied (Dkt. No. 36).

## I.     Factual Background

The following facts are undisputed unless stated otherwise.[1]  Mr. O'Neal was employed by the District for 29 years.  At the time of his termination, he served as the director of the District's physical plant.  Mr. O'Neal was employed annually by written contract.  In April 2010, the District's school board hired Dr. Randy Willison as superintendent for the 2010-2011 school year.  Dr. Willison replaced Ted Hall.  Mr. Hall had served as the District's superintendent for the previous ten years.

While he was superintendent, Mr. Hall allowed Mr. O'Neal to live on District property in the Gaston house in consideration for Mr. O'Neal being on call 24 hours a day.  The District acknowledges that Mr. Hall allowed Mr. O'Neal to live in the Gaston house rent free but disputes that Mr. O'Neal was required to be on call 24 hours a day.  It is undisputed that living in the Gaston house was not a part of Mr. O'Neal's written contract.

At the time the District was considering candidates to replace Mr. Hall, Mr. O'Neal told Paul Hance, the president of the District's board of directors, that he would move out of the Gaston house if Mr. Hance thought it would help the District hire a superintendent.  Mr. Hance agreed that doing so would be a benefit to the District.

Mr. O'Neal intended to be out of the Gaston house by June 30, 2010, but he was informed that the District needed the house sooner than that.  After his hire, Dr. Willison intended to move into the house.  Mr. Hall agreed to help Mr. O'Neal move out of the house and to "get him whatever he needed."  Mr. Hall gave Mr. O'Neal permission to store his personal

---

[1]  The undisputed facts are taken from defendants' statement of undisputed material facts (Dkt. No. 28), Mr. O'Neal's response to defendants' statement of undisputed material facts (Dkt. No. 32), Mr. O'Neal's statement of undisputed material facts (Dkt. No. 35), and defendants' response to Mr. O'Neal's statement of undisputed material facts (Dkt. No. 44) unless otherwise noted by specific citation.

property at the old school bus shop and to use an old trailer that belonged to the District. The parties dispute whether Mr. O'Neal discussed storage of his personal property with Mr. Hance.

On August 11, 2010, Dr. Willison met with Mr. O'Neal and shared with him that someone had written a letter outlining anonymous complaints about him. One of the complaints was that Mr. O'Neal was storing his personal belongings on school property and another was that he was using school property for personal use. Dr. Willison advised Mr. O'Neal verbally and by memo that he was not saying these accusations were true but that Mr. O'Neal should make sure they were not. Mr. O'Neal acknowledged receipt of the memo by email.

In October 2010, Mr. O'Neal used a District-owned tractor and loader to move an air conditioner to his new residence. He also used the District's bush hog and scissor jack for personal business.

The last item to be moved from the Gaston house was an old safe owned by the District. Mr. O'Neal's ex-wife used the safe to store District records; she worked part-time for the District. Mr. O'Neal claims that, at the time he moved from the Gaston house, he told Larry Hawkins to call special programs to find out where to put the safe. He claims he then told Mr. Hawkins to store it at Cushman High School. The District claims that Mr. O'Neal was aware the safe was stored in his son's garage.

On October 19, 2010, Dr. Willison met with Mr. O'Neal and showed Mr. O'Neal pictures he had received of Mr. O'Neal using the District's tractor. Mr. O'Neal told Dr. Willison that he was just using the equipment to help with his move. During the meeting, Dr. Willison asked Mr. O'Neal where the safe was. Mr. O'Neal told him it was at Cushman High School. Mr. O'Neal claims he would later learn that the safe had been taken to his son's house.

Dr. Willison notified Mr. O'Neal by letter dated October 25, 2010 that he was recommending to the school board that Mr. O'Neal's contract be terminated.  The letter sets forth Dr. Willison's reasons for the recommendation and explains Mr. O'Neal's right to a hearing.  Specifically, the letter accuses Mr. O'Neal of insubordination for his continued use of school property for non-school purposes after the August 11, 2010 meeting.  The letter states that the District had come into possession of photographs of Mr. O'Neal using a District-owned tractor for non-school purposes and that the District had discovered additional school equipment that Mr. O'Neal had used for non-school purposes during an inspection of Mr. O'Neal's property.  The letter references the August 11, 2010 memo from Dr. Willison to Mr. O'Neal.

The letter also accuses Mr. O'Neal of providing Dr. Willison with false information regarding the whereabouts of the safe.  The letter states that Mr. O'Neal told Dr. Willison that the safe had been moved to Cushman High School sometime in June 2010.  Dr. Willison claims he later learned that Mr. O'Neal had had the safe moved to Cushman High School the morning of the October 19, 2010 meeting.

Mr. O'Neal requested a public hearing.  The hearing was held on November 11, 2010. Both the District and Mr. O'Neal presented evidence and witness testimony.  During the hearing, Mr. O'Neal testified that the District had a long-standing policy of loaning school equipment to its employees, a fact to which the District stipulated.  The record evidence before the Court includes a transcript of the hearing.  At the end of the hearing, the School Board voted to terminate Mr. O'Neal's contract.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to establish by "specific facts" that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An issue of fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### III. Analysis

#### A. Substantive Due Process Claim

The Due Process Clause of the Fourteenth Amendment contains a substantive component that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). To establish a substantive due process violation, a plaintiff "must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816 (8th Cir. 2011) (quoting *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007)). "The constitutional right to substantive due process includes a right to be 'free from discharge for reasons that are arbitrary and capricious, or in other words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a basis in fact.'" *Herts v. Smith*, 345 F.3d 581, 587 (8th Cir. 2003) (quoting *North Dakota State Univ. v. United States*, 255 F.3d 599, 605 (8th Cir. 2001)). "This is a high standard, as '[s]ubstantive due process is concerned with violations of personal rights so severe .

. . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Christiansen v. West Branch Community Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012) (alterations in original) (quoting *C.N. v. Willmar Pub. Sch., Independent Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976).

The District's termination of Mr. O'Neal was not conscience-shocking. The reasons given for Mr. O'Neal's termination were neither trivial nor wholly unsupported by a basis in fact. *See Herts*, 345 F.3d 581 (holding that school district's failure to renew teacher's contract did not rise to the level of conscience-shocking). Therefore, defendants are entitled to summary judgment on Mr. O'Neal's substantive due process claim.

### B.     Procedural Due Process Claim

To establish a procedural due process violation, a plaintiff must first establish a constitutionally protected property or liberty interest. *Christiansen*, 674 F.3d at 934. The parties do not dispute that Mr. O'Neal, by virtue of his written contract with the District, had a property interest in his job. Mr. O'Neal also claims a liberty interest in his reputation.

"A public employee with a protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review." *Id.* (quotation marks omitted). The procedural due process rights of an employee fired under circumstances placing a stigma on his reputation "are vindicated by a name-clearing hearing at a meaningful time during which the

employee can respond to the employer's accusations." *Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006) (quotation marks omitted).

The Eighth Circuit recently confirmed that *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), does not require an elaborate pre-termination hearing. "'The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Sutton v. Bailey*, 702 F.3d 444, 447 (8th Cir. 2012) (quoting *Loudermill*, 470 U.S. at 545-46). The hearing serves as "'an initial check against mistaken decisions. . . .'" *Id.* (alternation in original) (quoting *Loudermill*, 470 U.S. at 545).

Pursuant to the Arkansas Public School Employee Fair Hearing Act, Ark. Code Ann. § 6-17-1701 *et seq.*, the District provided Mr. O'Neal with timely notice of Dr. Willison's recommendation that Mr. O'Neal's contract be terminated and the reasons for this recommendation. The District informed Mr. O'Neal of his right to a hearing before the school board. During the hearing, Mr. O'Neal was allowed to present evidence and testimony. The Eighth Circuit has held that a state statute containing similar requirements provides "fairly elaborate pre-termination process." *Christiansen*, 674 F.3d at 937.

Mr. O'Neal contends that the hearing was a "sham with a foregone conclusion." However, "[d]ue process . . . does not require *predecision* hearings. It only requires an opportunity to be heard prior to the termination of benefits." *Sutton*, 702 F.3d at 448 (alteration in original) (quoting *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988)). Mr. O'Neal was afforded that opportunity.

Finally, Mr. O'Neal contends that he had a protected liberty interest in his reputation. To establish a procedural due process violation based on the deprivation of a protected liberty

interest in a public employee's reputation, a plaintiff must demonstrate that (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status.  *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009).  He must also prove that he requested and was denied a name-clearing hearing.  *Id.* "An employee's liberty interest is implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges."  *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir. 1993).

Assuming without deciding that Mr. O'Neal had a protected liberty interest, *cf. Allen v. City of Pocahontas*, 340 F.3d 551 (8th Cir. 2003) (holding that allegations of insubordination and complaints are not sufficiently stigmatizing to implicate a liberty interest), he cannot establish a procedural due process violation because he requested and was provided a pre-termination name-clearing hearing.  That is all that due process requires.

### C.    First Amendment Claim

The First Amendment prohibits the government from retaliating against a public employee based on the employee's speech or associations.  *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).  To establish a *prima facie* case of retaliation under the First Amendment, a plaintiff must show that his conduct was constitutionally protected and that the protected conduct was a substantial or motivating factor in the defendant's decision to terminate him.  *Id.*  Whether a public employee's speech is protected by the First Amendment involves a two-step analysis.  The Court first determines whether the employee's speech, based on its content, form, and context as revealed by the whole record, can be "'fairly characterized as constituting speech on a matter of public concern.'"  *Shands*, 993 F.2d at 1342 (quoting *Connick*

*v. Myers*, 461 U.S. 138, 146 (1983)).  If the speech is on a matter of public concern, the Court must then balance the "'interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  *Id.* (alteration in original) (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).  "Both of these questions are questions of law for the court." *Id.*

"When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern." *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999).  The speech must relate to some matter of political, social, or other community concern to qualify for First Amendment protection.  *Kozisek v. County of Seward*, 539 F.3d 930, 936 (8th Cir. 2008).  Speech is not protected simply because the public might have an interest in the topic of the speech.  *Bailey v. Department of Elementary & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006).  The focus is "'on the role the employee . . . assumed in advancing the particular expressions:  that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties . . .; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.'"  *Id.* (alteration in original) (quoting *Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668, 672 (8th Cir. 1986)).

Mr. O'Neal alleges that he was terminated for exercising his right to a public hearing.  He contends that "whether the District would pursue a policy represented by O'Neal's termination and the motives underlying the act is of the utmost public concern" and that "the District's support of Dr. Willison was a chilling reminder to the District's employees, teaching staff as well as maintenance personnel, of who was in control."  While that may be, Mr. O'Neal has presented

no evidence that he was speaking primarily as a concerned public citizen.  The record supports the District's contention that Mr. O'Neal requested the hearing after Dr. Willison made the recommendation to terminate him.  The purpose of the hearing was to challenge Dr. Willison's recommendation.  The hearing was job-related.  Mr. O'Neal has not established a *prima facie* case of retaliation.

Even if Mr. O'Neal had met his burden of establishing a *prima facie* case, defendants presented legitimate nondiscriminatory reasons for Mr. O'Neal's termination.  *Duffy v. McPhillips*, 276 F.3d 988, 991-92 (8th Cir. 2002).  It is undisputed that Dr. Willison recommended termination based on acts predating the hearing.  The burden then shifts back to Mr. O'Neal to establish that defendants' reasons for his termination were pretextual.  *Id.*  Meeting the burden to establish pretext is more difficult than at the *prima facie* stage because evidence of pretext and discrimination are viewed in the light of the employer's justification.  *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002).  Mr. O'Neal has not provided a basis upon which a reasonable jury could find that defendants' justifications were pretextual.  For these reasons, defendants are entitled to summary judgment on the First Amendment claim.

### D.      Conspiracy Claim

Mr. O'Neal alleges that Dr. Willison and members of the District's school board conspired to terminate Mr. O'Neal for exercising federally protected rights.  The District has moved to dismiss these allegations for failure to state a claim upon which relief may be granted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  While a complaint should not be dismissed because it "strikes a savvy judge . . . that a recovery is very

remote and unlikely," *Twombly*, 550 U.S. at 556, the plaintiff must allege facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*

To the extent Mr. O'Neal attempts to rely on federal law, it appears that Mr. O'Neal is attempting to allege a claim under 42 U.S.C. § 1985.  To prevail on a § 1985 claim, a plaintiff must prove:  "(1) that the defendants did 'conspire,' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws,' (3) that one or more of the conspirators did, or caused to be done, 'any act in furtherance of the object of the conspiracy,' and (4) that another person was 'injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'"  *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting 42 U.S.C. § 1985(3)). "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'"  *Id.*  Mr. O'Neal has not alleged or presented evidence of a class-based invidiously discriminatory animus.  The Court finds that Mr. O'Neal's conspiracy allegations do not state a plausible claim for relief under federal law.

### E.    Qualified Immunity

The doctrine of qualified immunity "protects a government official 'from liability for civil damages in so far as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011).  "In a qualified immunity inquiry, the first question is:  Taken in

the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Wimbley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009). The second question is whether the right was clearly established. *Id.* at 963.  The Court may consider these questions in either order.  *Pearson v. Callahan*, 555 U.S. 223, 235 (2009).

The Court has already determined that Mr. O'Neal has failed to establish a deprivation of a constitutional right.  Therefore, the individual defendants are entitled to qualified immunity.

F.    **State Law Claims**

Pursuant to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over Mr. O'Neal's state law breach of contract, defamation, and conspiracy claims.  *See Birchem v. Knights of Columbus*, 116 F.3d 310, 314 (8th Cir. 1997) ("In most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'").

IV.    **Conclusion**

For the foregoing reasons, the District's motion for summary judgment is granted.  Mr. O'Neal's substantive due process, procedural due process, and First Amendment claims are dismissed with prejudice.  Mr. O'Neal's conspiracy claim and his state law breach of contract, defamation, and conspiracy claims are dismissed without prejudice.  Mr. O'Neal's motion for summary judgment is denied.

SO ORDERED this 15th day of February, 2013.

Kristine G. Baker
United States District Judge